# 13-2730-cv

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

◆◆

NYKCOOL A.B.,

*Plaintiff-Appellee,*

—against—

ECUADORIAN LINE, INC.,

*Defendant-Appellant,*

PACIFIC INTERNATIONAL SERVICES, INC., PAN AMERICAN TRADING COMPANY, INC., FRUIT IMPORTERS AMERICAS, INC., PACIFIC GROUP HOLDING, INC., SOUTH PACIFIC SHIPPING CO., LTD., ALVARO FERNANDO NOBOA PONTON, CARLOS AGUIRRE, CARLOS AHLSTROM, EDWARD HICKEY, ROBERT KISSINGER,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX OF DEFENDANT-APPELLANT

MICHAEL D. WILSON
CASPAR F. EWIG
HILL RIVKINS LLP
45 Broadway, 15th Floor
New York, New York 10006
(212) 669-0600

*Attorneys for Defendant-Appellant*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1 and 28(a)(1), Appellant Ecuadorian Line Inc. hereby discloses that there is no publicly-traded corporation that owns 10% or more of its stock.

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES…………………………………..        iv

PRELIMINARY STATEMENT……………………………….        2

      a.  The Order Appealed From……………………………        2

      b. The History and Background of the Case……………..        3

STATEMENT OF FACTS…………………………………..        5

SUMMARY OF ARGUMENT…………………………………        7

STANDARD OF REVIEW…………………………………...        7

POINT I

      NO BASIS EXISTS TO PIERCE
      ECUADORIAN LINE'S CORPORATE VEIL
      OR TO FIND ALTER EGO LIABILITY
      AS A MATTER OF LAW……………………………..        8

POINT II

      NO BASIS EXISTS TO PIERCE
      ECUADORIAN LINE'S CORPORATE VEIL
      OR TO FIND ALTER EGO LIABILITY
      AS A MATTER OF FACT……………………………….        11

POINT III

      PLAINTIFF FAILED TO MEET
      THE STANDARD OF PROOF
      REQUIRED FOR SUMMARY JUDGMENT…………….        18

- ii -

CONCLUSION…………………………………………………..   21

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page**

Am. Fuel Corp. v. Utah Energy Dev. Co.
122 F.3d 130 (2d Cir. 1997)………………………………………    9

Amnesty Am. v. Town of W. Hartford
361 F.3d 113 (2d Cir.2004)………………………………………    19

Anderson v. Liberty Lobby, Inc.
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)………………    18, 19

Arctic Ocean Int'l, Ltd. v. High Seas Shipping Ltd.
622 F.Supp.2d 46 (S.D.N.Y.2009)………………………………    9

Bridas S.A.P.I.C. v. Gov't of Turkmenistan
447 F.3d 411 (5th Cir.2006)………………………………………    10

Caldarola v. Calabrese
298 F.3d 156 (2d Cir.2002)………………………………………    18

Celotex Corp. v. Catrett
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)………………    18

Clipper Wonsild Tankers Holding A/S v. Biodiesel Ventures, LLC,
851 F.Supp.2d 504 (S.D.N.Y.,2012)………………………………    9, 17

De Jesus v. Sears, Roebuck & Co.
87 F.3d 65 (2d Cir.1996)…………………………………………    10

Kirno Hill Corp. v. Holt
618 F.2d 982 (2d Cir.1980)………………………………………    9, 16

MAG Portfolio Consultant GmbH v. Merlin Biomed Grp., LLC
268 F.3d 58 (2d Cir. 2001)……………………………………......    8, 11, 12
                                                                              16

<u>Miller v. Wolproff & Abramson, LLP</u>
321 F.3d, 292 (2d Cir. 2003)……………………………………..    8

<u>Ridge Clearing & Outsourcing Solutions, Inc. v. Khashoggi,</u>
2011 WL 3586455 10 (S.D.N.Y., 2011)……………………………    9, 16, 17

<u>United States v. Funds Held in the Name or for the Benefit</u>
<u>of Wetterer</u>, 210 F.3d 96, 106 (2d Cir. 2000)………………………..    9

<u>Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.</u>
475 F. Supp.2d 275 (S.D.N.Y., 2006)………………………………..    10, 17

<u>Weyant v. Okst</u>
101 F.3d 845 (2d Cir.1996)…………………………………………    19

<u>William Passalacqua Builders, Inc. v. Resnick Developers S. Inc.</u>
933 F.2d 131 (2d  Cir. 1991)…………………………………………    17

<u>Williams v. McAllister Bros. Inc.</u>
534 F.2d 19 (2d Cir.1976)…………………………………………    10

## Statutes and Rules

28 U.S.C. §1291……………………………………………………    1

28 U.S.C. §1333……………………………………………………    1

Fed.R.Civ. P. 54(b)…………………………………………………    1, 2

Fed. R. Civ. P. 56(a)………………………………………………..    8, 18

## Other Authorities

NY Business Corp. Law §720…………………………………………    3

## <u>SUBJECT MATTER AND APPELLATE JURISDICTION</u>

Plaintiff-Appellee commenced this action in the district court pursuant to the court's admiralty and maritime jurisdiction under 28 U.S.C. §1333. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291, in that Ecuadorian Line Inc. appeals from a Final Judgment, as certified by the district court pursuant to F.R.C.P. 54(b) on June 14, 2013. Ecuadorian Line Inc. filed a timely notice of appeal on July 15, 2013.

## PRELIMINARY STATEMENT

### a. The Order Appealed From

This is an appeal from an Order by the Hon. Lewis A. Kaplan dated June 14, 2013 (SPA-3) (hereinafter the "Order") granting Plaintiff summary judgment against various defendants, including Ecuadorian Line, Inc.  Although the summary judgment did not resolve all of the claims against all the parties, Judge Kaplan made a finding pursuant to Fed.R.Civ. P. 54(b) that there was no just reason to delay entry of judgment against Ecuadorian Line.

Judge Kaplan's Order had been preceded by a Report and Recommendation issued by Magistrate Judge Andrew J. Peck on March 29, 2013 (A-870)[1] (hereinafter  the "R&R") which recommended that summary judgment be granted as "against all corporate defendants" without separately identifying them.[2] Ecuadorian Line filed a timely objection to the R&R, but Judge Kaplan denied the objection and found that sufficient facts existed to grant summary judgment against Ecuadorian Line.  Judge Kaplan's order does not specifically adopt the R&R, but

---

[1]   References to the Record are in the form "(DI-)", references to the Special Appendix are in the form "(SPA-)", and references to the Joint Appendix are in the form "(A-)".

[2] In fact by recommending summary judgment against "all corporate defendants, the Magistrate Judge recommended judgment against a defendant which was not named in plaintiff's summary judgment motion.  This error was corrected by a subsequent Endorsed Letter Memorandum (A-906).

refers to it and to Plaintiff's Response (A-940) to Ecuadorian Line's objection. For the purposes of this appeal, Ecuadorian Line presumes that the R&R was adopted to the extent of any findings made by the Magistrate Judge.

### b. The History and Background of the Case

NYK Cool AB obtained a judgment on September 7, 2011 enforcing an April, 2010 maritime arbitration award against Pacific Fruit Inc. ("Pacific Fruit") and Kelso Enterprises Ltd. in the United States District Court for the Southern District of New York, which judgment remains unsatisfied (A-871). NYK Cool then commenced this action against companies related to Pacific Fruit: i.e. Pacific International Services, Inc. ("PISI"), Pan American Trading Company Inc. ("PAT"), Fruit Importers Americas, Inc. ("FIA") Pacific Group Holdings, Inc., ("PGH"), and Ecuadorian Line, Inc., as well as against South Pacific Shipping Co., Ltd., and Carlos Aguirre and Edward Hickey, who were officers and directors of some of the named companies (A-49). Among many other allegations in the complaint,[3] NYK Cool alleges that the above corporate defendants are liable for the Pacific Fruit judgment on veil-piercing and alter-ego theories and, as to FIA, on a successor liability theory.

---

[3] The complaint also contains causes of action for RICO damages and liability of the personal defendants under NY Business Corporation Law § 720. None of those issues are part of this appeal.

On February 15, 2013, NYK Cool moved for summary judgment a) against PISI, PAT, FIA, PGH and Ecuadorian Line on the veil-piercing and alter-ego claims, b) against FIA on successor liability theories, and against c) Aguirre and Hickey on claims of corporate misconduct (A-21).

By R&R dated March 29, 2013 (A-870) Magistrate Judge Andrew Peck recommended that the motion be denied as to the claims against Aguirre and Hickey but that the motion be granted as against "the corporate defendants" which included Ecuadorian Line. On April 15, 2013 Ecuadorian Line filed Objections to the R&R (A-924), to which plaintiff filed its Response (A-940), essentially repeating its earlier allegations set out in the summary judgment motion. Plaintiff also objected to the R&R to the extent it recommended denial of summary judgment against Aguirre and Hickey (A-914).

On June 14, 2013, the Hon. Lewis A. Kaplan entered an Order (SPA-3) granting summary judgment against PISI, PAT, FIA, and PGH since those entities had filed no objection to the R&R  Furthermore Judge Kaplan overruled Plaintiff's objection to the R&R and denied summary judgment against Aguirre and Hickey .

With regard to Ecuadorian Line's objections to the R&R, the District Court found that sufficient evidence existed to support the recommendation of the Magistrate Judge and granted summary judgment against Ecuadorian Line. The district court made no independent findings of fact as to Ecuadorian Line's

liability, but "concludes that the evidence was more than conclusive to justify the magistrate judge's recommendation, substantially for the reason set forth in NYK's response to Ecuadorian's objections."[4]

## <u>STATEMENT OF FACTS</u>

Ecuadorian Line is a Delaware corporation the stock of which is owned by PGH, a holding company that is also a Delaware corporation (A-727-8).

PGH was also the owner of the stock of PISI, PAT, FIA and Pacific Fruit ("PF") and these subsidiary sister companies shared common officers and directors as well as common office space in Newark, New Jersey.  The corporate relationship is graphically as follows:



Each company had its own role in the importation and sale of bananas in the United States.  PF was in the business of the importation to the United States of bananas and other fruit (A-726-7).  PAT is a purchasing agent for the affiliated entries for which service it charged commission (A-491).  PISI provided accounting, financial and legal services to the affiliated companies (A-483).  Finally, Ecuadorian Line acted (and still acts) as a cargo agent representing the

---

[4] No appeal from the grant of summary judgment is being pursued by FIA, PAT or PISI and no appeal from the denial of summary judgment against Aguirre and Hickey is being pursued by plaintiff.

operators of vessels which transport bananas and other fruits from Ecuador to the United States (A-590).  As agent, Ecuadorian Line arranged for and paid the costs incurred by the vessel and for the discharge and distribution of the bananas for which it was reimbursed by the cargo receiver, PF and, later, FIA (A-456-458).

Ecuadorian Line began the year 2011 with a $203,000 account receivable balance owed by Pacific Fruit for services rendered the previous year.  During that year Ecuadorian Line paid port expenses totaling $1.5 million, for which it was reimbursed by Pacific Fruit.  The corporate financial records reflect payments from Pacific Fruit to Ecuadorian Line totaling $1.7 million, resulting in a balance due to Pacific Fruit from EL at the close of 2011 in the amount of $316.00 (A-459).

Around the time of the April 2010 Arbitration Award, PF made transfers of approximately $2 million to PAT and $600,000 to PISI, adjudged to have been without consideration, and which remain outstanding (A-728, 877).

Following the entry of judgment against PF, it began to transfer its receipts daily into the account of PAT to avoid seizure by the judgment creditor.  PAT used these funds to pay PF's operating expenses to permit the company to continue operations (A-595, 602).  The only funds transfers to Ecuadorian Line were in reimbursement of business-related transportation expenses which Ecuadorian Line had advanced or incurred in transporting the banana cargoes (A-404, 457-8, 928).

On or about April 1, 2011, PF ceased operations and FIA assumed the fruit importing and sale business of PF until it, too, ceased operations (A-874).

## SUMMARY OF ARGUMENT

In granting summary judgment against PAT, PISI and PGH on alter ego and veil piercing theories, the June 14, 2003 Order and the March 29, 2013 R&R relied on the transfers of funds without consideration from PF to those companies, and in granting judgment against FIA on a successor liability theory, the Order and R&R relied on FIA's assumption of PF's business.  By granting summary judgment against Ecuadorian Line, the district court improperly relied only upon "guilt by association."  The R&R upon which it was based a) failed to apply the relevant factors for veil piercing to Ecuadorian Line independently and instead applied those factors to the "corporate defendants" collectively, and b) granted summary judgment despite the existence of questions of material fact and c) failed to resolve ambiguities of fact in a light most favorable to non-movant Ecuadorian Line. Thus, summary judgment was both procedurally and substantively improperly granted.

## STANDARD OF REVIEW

The standard of review of a district court's grant of summary judgment is de novo, construing the evidence in the light most favorable to the non-movant in order to determine whether there exists a genuine dispute as to any material fact

and whether the movant is entitled to a judgment as a matter of law.  Fed. R. Civ.

P. 56(a);  Miller v. Wolproff & Abramson, LLP, 321 F.3d, 292, 300 (2d Cir. 2003).

**POINT I**

**NO BASIS EXISTS TO PIERCE
ECUADORIAN LINE'S CORPORATE VEIL
OR TO FIND ALTER EGO LIABILITY
AS A MATTER OF LAW**

The Magistrate Judge in his R&R correctly acknowledged that  the factors

enumerated in MAG Portfolio Consultant GmbH v. Merlin Biomed Grp., LLC, 268

F.3d 58, 63 (2d Cir. 2001) controlled the determination of whether a corporate veil

should be pierced:

> "Determining that veil-piercing is appropriate is a 'fact specific'
> inquiry, and courts consider many factors, including:
>
> (1) disregard of corporate formalities; (2) inadequate capitalization;
> (3) intermingling of funds; (4) overlap in ownership, officers,
> directors, and personnel; (5) common office space, address and
> telephone numbers of corporate entities; (6) the degree of discretion
> shown by the allegedly dominated corporation; (7) whether the
> dealings between the entities are at arm['s] length; (8) whether the
> corporations are treated as independent profit centers; (9) payment or
> guarantee of the corporation's debits by the dominating entity; and
> (10) intermingling of property between the entities."

However, immediately preceding that catalogue of factual indicia, and as a

prerequisite to such an analysis, the MAG Portfolio court noted:

> Under New York law, a court may pierce the corporate veil where 1)
> "the owner exercised complete domination over the corporation with
> respect to the transaction at issue," and 2) "such domination was used
> to commit a fraud or wrong that injured the party seeking to pierce

8

the veil." <u>Am. Fuel Corp. v. Utah Energy Dev. Co.</u>, 122 F.3d 130, 134 (2d Cir.1997).

Federal common law applicable in admiralty cases is, if anything, even more strict and requires the existence of extraordinary circumstances. <u>Clipper Wonsild Tankers Holding A/S v. Biodiesel Ventures, LLC</u>,  851 F.Supp.2d 504, 508 (S.D.N.Y.,2012, Sullivan, D.J.):

> Under federal common law, courts are reluctant to pierce a corporate veil and impose liability on a separate, related entity, but may do so under extraordinary circumstances. <u>Arctic Ocean Int'l, Ltd. v. High Seas Shipping Ltd.</u>, 622 F.Supp.2d 46, 53 (S.D.N.Y.2009). In order to "pierce the corporate veil" under the federal common law standard, a plaintiff must show that an alter ego was used to "perpetrate a fraud" or was "so dominated" and its corporate form so "disregarded" that the alter ego "primarily transacted [another entity's] business rather than [its] own corporate business." <u>Kirno Hill Corp. v. Holt</u>, 618 F.2d 982, 985 (2d Cir.1980).

Or, as stated in <u>United States v. Funds Held in the Name or for the Benefit of Wetterer</u>, 210 F.3d 96, 106 (2d Cir. 2000):

> Veil-piercing is done with "extreme reluctan[ce]," and is reserved for cases where "the corporation primarily transacts the business of the dominating interest rather than its own."

Overlapping of corporate officers, and even the failure to observe corporate formalities alone will not justify piercing the corporate veil in the absence of fraud or other wrongful conduct. <u>Ridge Clearing & Outsourcing Solutions, Inc. v. Khashoggi</u>,  2011 WL 3586455, 10 -11  (S.D.N.Y., 2011, Holwell, D.J.):

> Proof of domination and control is insufficient on its own to justify piercing the veil. Plaintiff must also establish that the defendant

9

> dominated and controlled the corporation in order to commit a
> wrong against the plaintiff that resulted in its injury..

Furthermore, the control must actually exist, not merely be available or potentially

possible. Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475 F.

Supp.2d 275, 282 (S.D.N.Y., 2006, Lynch, D.J.):

> To show that piercing is appropriate on an alter ego theory,
> "[a]ctual domination, rather than the opportunity to exercise
> control, must be shown." De Jesus v. Sears, Roebuck & Co., 87
> F.3d 65, 69 (2d Cir.1996), quoting Williams v. McAllister Bros.
> Inc., 534 F.2d 19, 21 (2d Cir.1976). "In making an alter ego
> determination, a court is concerned with reality and not form, and
> with how the corporation operated. Unlike the theory of agency,
> which interprets a contractual relationship, alter ego examines the
> actual conduct of the parent vis-á-vis its subsidiary." Bridas
> S.A.P.I.C. v. Gov't of Turkmenistan, 447 F.3d 411, 416 (5th
> Cir.2006) (internal citations, alterations and quotation marks
> omitted).

Thus, in the absence of either factor: i.e. complete actual control or use of that control

to commit a fraud or a wrong, the corporate veil will not be pierced.  Similarly, the

use of complete domination and loss of individuality to work a fraud or cause a

wrong to a creditor are necessary to impose alter ego liability.

Neither the R&R, the Order, nor even the Plaintiff's Response to Ecuadorian

Line's objection point to, nor could they point to, any fact evidencing the necessary

"complete control" or the "commission of a fraud" in the operation and financial

transactions involving Ecuadorian Line and any other of the corporate defendants. To

the contrary, Ecuadorian Line always operated independently as a carrier's agent in

10

the discharge and subsequent pier handling of the imported banana cargoes. The only funds it ever received from Pacific Fruit or any other corporate entity were in payment of services rendered as a carrier's agent.

## POINT II

### NO BASIS EXISTS TO PIERCE ECUADORIAN LINE'S CORPORATE VEIL OR TO FIND ALTER EGO LIABILITY AS A MATTER OF FACT

The MAG Portfolio factual indicia which the court are to evaluate include (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arm['s] length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debits by the dominating entity; and (10) intermingling of property between the entities."

The R&R placed heavy emphasis on numerous transfers of funds from Pacific Fruit to certain of the other entities, most notably transfers totaling $2 million from Pacific Fruit to PAT and $600,000 from Pacific Fruit to PISI and concluded the veils of those corporations should be pierced since those transfers were without commercial consideration and left Pacific Fruit judgment proof. The R&R wrongfully concluded that, since those transfers constituted evidence of

11

intermingling of property, the absence of arms-length dealing and the absence of

independent profit centers, the second, third, eighth, ninth and tenth <u>MAG Portfolio</u>

factors were satisfied as to <u>all</u> defendants.  However, neither Magistrate Judge Peck

in his R&R, nor Judge Kaplan in his Order, nor Plaintiff's response incorporated into

the Order ever undertook a separate inquiry as to the application of these factors to

Ecuadorian Line.  The absence of such a finding is, in and of itself telling, in that the

absence of such a finding means that, for summary judgment purposes, the facts do

not exist.

The R&R concludes that "Pacific and the corporate defendants do not hold

corporate meetings, whether and who maintains corporate records is unknown, and

individuals who were not corporate officers, directors or employees gave instructions

as to major corporate transactions (A-887).

Ecuadorian Line concedes that its officers testified that corporate meetings

were not held and the president testified that while corporate books were maintained

he did not know in whose possession the books were located (A-494, 754).

However, no evidence was offered and no finding was made that Ecuadorian Line

took instructions on corporate transactions from persons outside the corporation.  The

findings concerning outsider instructions were limited to instructions to Pacific Fruit

to cease doing business (A-874) and to transfer the banana importation business to

FIA (A-875).  These instructions had nothing to do with Ecuadorian Line.  Thus, any

failure by Ecuadorian Line to observe corporate formalities did not result in the outside influence that would justify a veil piercing or an alter ego finding.

The R&R concludes that regular transfers of funds from Pacific Fruit rendered it judgment- proof (A-888).   Again, this conclusion is drawn primarily from findings that Pacific Fruit transferred at least $2 million to PAT and $600,000 to PISI (A-877).  No specific transfer to Ecuadorian Line is referenced in the R&R, and no improper transfer was ever shown to exist.

Reference is made in the R&R to transfers in general, not specific to any defendant ("Money flowed from one corporate defendant to another as needed in the form of advances or transfers") (A-877).  The authority cited for this conclusion is NYK Cool's Rule 56.1 Statement, ¶12, (A-27) and the January 13, 2012 deposition testimony of Carlos Aguirre (A-498, 502-505).  Paragraph 12 of the Rule 56.1 Statement however specifically references only a transfer to PAT and generally alleges that the "defendant companies commonly moved money as needed" and "[c]ommingling of corporate funds was said to be common" (A-27).  Defendants denied that funds were commingled  (A-756).  The cited pages of the Aguirre deposition concern transfers to PAT only; not Ecuadorian Line (A-498, 502-505). Thus, while the evidence showed transfers to PAT only, the R&R applied "guilt by association" and concluded that transfers were made to all the corporate defendants.

13

The R&R also states "In addition to the $2 million transfer [to PAT], Pacific also transferred funds to Ecuadorian Line to satisfy Pacific's debts" (A-878-9). The transfers of funds to Ecuadorian Line, however, were normal course of business reimbursements to a vessel agent for importation costs incurred and are not evidence of "commingling of funds" or participation in a fraudulent scheme to strip a judgment debtor of its assets.  Bookkeeper Santoro explained:

> "The advances are Ecuadorian Line pays expenses on behalf of Pacific Fruit for the stevedoring, the loading, discharging of the bananas at the ports, because the invoices are actually - -  the invoices come made out to Ecuadorian Line and Ecuadorian Line pays on behalf of Pacific Fruit."
> (A-404).

> Comptroller Arocho testified in the same vein:

> "Q.  Does Fruit Importers today pay Ecuadorian Line any fees?

> A.  Yes.

> Q.  What are those fees for?

> A.  Those are fees reimbursing them for expenses they have paid on Fruit Importers behalf for anything having to do with the bananas.

> Q.  The ocean transportation of the bananas?

> A.  The port expenses.

> Q.  Is that the same arrangements that Pacific Fruit had?

> A.  Yes."

> (A-457-8).

14

The facts as presented by Mr. Santoro and Mr. Arocho clearly contradict any conclusion of an "intermingling of funds" involving Ecuadorian Line.  To the contrary, the only evidence of transfers from Pacific Fruit to Ecuadorian Line was that of transfers to reimburse Ecuadorian Line for its payment of Pacific Fruit's ocean transportation expenses.

The ownership of Ecuadorian Line is in the hands of a holding company, PGH, which also holds the ownership of Pacific Fruit, FIA, PISI and PAT. These companies also share common officers and directors and share office space, but no evidence was submitted (and none exists) that apart from its officers, any Ecuadorian Line employee was also employed by or undertook duties for another entity, and there is no basis for such a conclusion.  Furthermore, since 2011 Ecuadorian Line was assessed and paid its portion of the rent. Prior to that date, the principal tenant in each office (Ecuadorian Line in Miami, PISI in Manhattan, PF in Staten Island, e.g.) paid its own rent (A-613).

No evidence was offered that Ecuadorian Line played any role in Pacific Fruit's business decisions or actions, or vice versa.  Again, the R&R rested its conclusion that Ecuadorian Line did not exercise its own discretion by pointing to the a) transfer of Pacific Fruit's business to Fruit Importers, b) the advances made to the other corporate defendants (A-887-8).   No evidence was presented nor was any

finding made that Ecuadorian Line was involved in the transfer of the Pacific Fruit business or received any improper transfers from Pacific Fruit.

The Report and Recommendation concludes that the 7th through 10th <u>Mag Portfolio</u> factors weigh in favor of veil piercing based on absence at arms' length dealing among the companies and routine advances among the companies (A-887-8). None of these transactions of advances, however, involved Ecuadorian Line.

As no evidence was offered that Ecuadorian Line received any transfers from Pacific Fruit, other than reimbursement of fruit transport expenses, that it gave any instructions to Pacific Fruit or was in any way involved in the transfer of business from Pacific Fruit to FIA, the only basis on which to conclude its corporate veil should be pierced and/or that it is an alter-ego of Pacific Fruit is that it is owned by the same parent and shares common officers, directors and office space with Pacific Fruit.  This is an insufficient basis to pierce the veil.  <u>Ridge Clearing & Outsourcing Solutions, Inc. v. Khashoggi</u>, <u>supra</u>.

In order to warrant piercing Ecuadorian Line's corporate veil, the court must find that it used Pacific Fruit or that Pacific Fruit used Ecuadorian Line to perpetuate a fraud or that either so dominated and disregarded the other's corporate form that Pacific Fruit or Ecuadorian Line primarily transacted the other's business rather than its own.  <u>Kirno Hill Corporation v. Holt</u>, 618 F.2d 982 (2d Cir. 1980).  There is no

16

evidence in the record, and none exists, that Ecuadorian Line used Pacific Fruit for a fraudulent end, or exercised any domination over Pacific Fruit, or vice versa.

When the factors recited in the cases cited in the R&R as justifying veil piercing are applied specifically to Ecuadorian Line and not collectively to all the corporate defendants, the justification for veil piercing disappears; there is no evidence of overlap in staff between Ecuadorian Line and Pacific Fruit, no evidence of absence of arms-length dealing or blurred lines of corporate control, no evidence of Ecuadorian Line's domination and control over Pacific Fruit or discretion over its business activities, and no evidence that Ecuadorian Line commingled funds with Pacific Fruit.  See William Passalacqua Builders, Inc. v. Resnick Developers S. Inc., 933 F.2d 131, 139-40 (2d  Cir. 1991); Clipper Wonsold Tankers Holding A/S v. Biodiesel Ventures, LLC, 851 F. Supp. 2d. 504, 51012 (S.D.N.Y. 2012, Sullivan, D.J.); Ridge Clearing & Outsourcing Solutions Inc. v. Khashoggi, 07 Civ. 661, 2011 WL 3586455 at *9 (S.D.N.Y., 2011.Howell, D.J.).

Nor is there evidence that either Ecuadorian Line or Pacific Fruit paid each other's debts, a "highly relevant" factor in a veil-piercing analysis.  See Wajilam Exps. (Sing.) Pte. Ltd. v. ATL Shipping Ltd., 475 F.Supp.2d 275, 284-85 (S.D.N.Y. 2006, Lynch, D.J.).  The only evidence presented is that Ecuadorian Line operated as the vessel operator's agent in the ocean carriage of cargoes, both the fruit for Pacific

Fruit and the cargoes of other entities, was reimbursed by Pacific Fruit for those carriage costs attributable to Pacific Fruit (A-404; 457-8).

In sum, the record presented on the summary judgment motion failed to demonstrate any intermingling of finances between Ecuadorian Line and Pacific Fruit or any domination between Pacific Fruit by Ecuadorian Line required to pierce Ecuadorian Line's corporate veil.

## POINT III

### PLAINTIFF FAILED TO MEET
### THE STANDARD OF PROOF
### REQUIRED FOR SUMMARY JUDGMENT

The standard for summary judgment is well settled. Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of proving that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has met its burden, the nonmoving party "must come forward with specific facts showing that there is a *genuine issue for trial.*" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir.2002) (emphasis in original) (internal citations and quotation marks omitted).

In ruling on a motion for summary judgment, the court must resolve any ambiguity in favor of the nonmoving party. <u>Amnesty Am. v. Town of W. Hartford</u>, 361 F.3d 113, 122 (2d Cir.2004). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments ...." <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir.1996). As a result, summary judgment should not issue where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248, 106 S.Ct. 2505.

In the few instances in which the R&R addressed Ecuadorian Line' liability individually instead of collectively, it failed to weigh the evidence in a light most favorable to defendant Ecuadorian Line, but instead resolved conflicts in plaintiff's favor.  While Hickey testified that office-related expenses were apportioned among the companies after initial payment by PISI (A-612), the R & R found "only PISI pays rent" (A-872-3).  Where Santoro and Arocho testified that payments by Pacific and FIA to Ecuadorian Line, the shipping agent, represented business-as-usual reimbursement of transportation expenses (A-404, 457-8), the R&R concluded that Pacific also transferred funds to EL to satisfy Pacific's "debts" (A-878-9), and "Pacific repeatedly advanced money to the corporate defendants, and as such, none of them were treated as independent profit centers" (A-889).  To

19

make such conclusions on the cited evidence is not even a fair analysis of the evidence, much less one made in a light most favorable to non-movant Ecuadorian Line.

The District Court's 14, 2013 Order similarly failed to weigh conflicting evidence in a light most favorable to Ecuadorian Line.  The Order held that the evidence of funds transfers involving Ecuadorian Line was sufficient to justify the recommendations of the R&R "substantially for the reasons set forth in NYK's response to Ecuadorian's objections" (SPA-4).  The only evidence cited in plaintiff's Response to its Objections to the R&R (A-940) was the Updated Expert Report prepared by John Slavek of Kroll Associates, Inc. (A-790).  The report by accountant John Slavek on behalf of Kroll states that "his company" has identified 14 transfers from Pacific Fruit to Ecuadorian Line which "did not appear to have any support to suggest a proper business purpose or provide an audit trail"  (CA-800).  However, in the Declaration of Peter B. Quinn, the accounting expert retained by defendants, Mr. Quinn states that he has examined each of these 14 transfers and followed the audit trail and confirms that the financial records of both the transferor and transferee reflect that each of the transfers were used for payment of invoices owed by Pacific Fruit and for general and administrative expenses of Pacific Fruit (A-747).  Mr. Slavek was able to report only that "his company" was unsuccessful in following the audit trail of the 14 transfers to Ecuadorian Line, while Mr. Quinn

20

affirmatively states that he succeeded in following in the trail and confirms the transfers were for legitimate business expenses.

Where plaintiff's expert can say no more than that "his company" failed to find business justification for these 14 transfers, but Ecuadorian Line's expert affirmatively confirms that he has successfully followed the trial and has found such business justification, the district court's conclusion that no business justification exists fails to view the evidence in the light most favorable to Ecuadorian Line.

## **CONCLUSION**

For the foregoing reasons, Appellant Ecuadorian Line, Inc., respectfully submits that the Order and Judgment, insofar as they entered judgment against Ecuadorian Line should be vacated or, in the alternative, the matter remanded to the district court with instructions to vacate the Order and Judgment as against Ecuadorian Line.

Dated:  New York, New York
        September 30, 2013

Respectfully submitted,
HILL RIVKINS LLP
Counsel for Appellant
Ecuadorian Line, Inc.

By: s/Michael D. Wilson
Michael D. Wilson
Caspar F. Ewig
45 Broadway, Suite 1500
New York, New York 10006
(212) 669-0600

21

## **STATEMENT OF RELATED CASES**

Appellant is not aware of any related cases pending before the Court of

Appeals.

By: s/Michael D. Wilson
Michael D. Wilson
Attorney for Appellant
Ecuadorian Line Inc.
Dated:  September 30, 2013

## Certificate of Compliance with Type-Volume Limitation, Typeface Requirements and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    this brief contains 4,738 words, as counted by Microsoft Office Word, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman type.

s/Michael D. Wilson
Michael D. Wilson
Attorney for Appellant
Ecuadorian Line Inc.
Dated:  September 30, 2013

23

# SPECIAL APPENDIX

# TABLE OF CONTENTS

PAGE

Order, dated March 11, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPA- 1

Order, dated June 14, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPA- 3

Judgment Pursuant to Rule 54(b) of the Federal Rules of Civil
    Procedure, dated June 26, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SPA- 5

SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NYKCOOL A.B.,                                        :

              Plaintiff,        :

        -against-                     :

PACIFIC INTERNATIONAL SERVICES, INC.;   :
PAN AMERICAN TRADING COMPANY, INC.;
FRUIT IMPORTERS AMERICAS, INC.; PACIFIC :
GROUP HOLDING, INC.; ECUADORIAN LINE,
INC.; SOUTH PACIFIC SHIPPING CO. LTD.;   :
ALVARO FERNANDO NOBOA PONTON;
CARLOS AGUIRRE; CARLOS AHLSTROM;    :
EDWARD HICKEY & ROBERT KISSINGER,

                      :

              Defendants,       :

                      :

        -and-                          :

PACIFIC FRUIT INC. & KELSO ENTERPRISES
LTD.,                                                     :

             Defendants-in-Interest.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 3/11/13

12 Civ. 5754 (LAK) (AJP)

**ORDER**

**ANDREW J. PECK, United States Magistrate Judge:**

        The Court rejects Defendants' "Response to Plaintiff's Local Rule 56.1 Statement and Counterstatement of Material Facts." (Dkt. No. 56: Defs. Rule 56.1 Stmt.) Defendants must respond to each sentence in NYKCool's Rule 56.1 Statement, and as required by SDNY-EDNY Local Civil Rule 56.1(d), each "statement by the . . . opponent . . . , including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible." Any disputed fact that is not supported by a citation to record evidence will be deemed admitted.

2

IT IS HEREBY ORDERED that defendants submit a revised Rule 56.1 Statement

to the Court by close of business Wednesday, March 13, 2013. NYKCool's reply papers remain due

on Friday, March 15, 2013.

SO ORDERED.

DATED:     New York, New York
           March 11, 2013

**Andrew J. Peck**
United States Magistrate Judge

Copies **by ECF** to:     All Counsel
                          Judge Lewis A. Kaplan

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NYKCOOL A.B.,

                           Plaintiff,

                -against-                                 12 Civ. 5754 (LAK)

PACIFIC INTERNATIONAL SERVICES, INC., et al.,

                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/14/13

ORDER

LEWIS A. KAPLAN, *District Judge.*

        Plaintiff NYKCool A.B. ("NYK") brings this action to collect the judgment previously entered against Pacific Fruit/Kelso Enterprises Ltd. against related companies, officers and directors that it contends are liable on theories of piercing the corporate veil and successor liability. The matter is before the Court on plaintiff's motion for summary judgment against (1) the corporate defendants on its veil piercing and alter ego theories, (2) defendant Fruit Importers Americas, Inc. ("FIA") for successor liability, and (3) defendants Aguirre and Hickey for corporate misconduct. In a report and recommendation dated March 29, 2013 (the "R&R"), Magistrate Judge Andrew J. Peck recommended that the motion be granted as to the corporate defendants but denied as to the individual defendants Aguirre and Hickey. NYK objects to the latter recommendation. The corporate defendants object as to the former.

*Aguirre and Hickey*

        Magistrate Judge Peck recommended denial of NYK's motion, to the extent it sought damages for alleged violation of Aguirre and Hickey of N.Y. Bus. Corp. L. § 720, on the ground that the statute affords a private right of action only for equitable relief and not for damages. R&R at 35. While NYK is correct that the Second Circuit in *Klein v. Tabatchnick,* 610 F.2d 1043 (2d Cir. 1979), noted the distinction between the availability of damages and equitable relief under Section 720, it did not hold that damages were permissible under the statute, pointing out that the issue would be "largely academic" on remand. *Id.* at 1050. Moreover, the Appellate Division expressly has held that Section 720 "may not be utilized to obtain a money judgment in an action at law." *Ali Baba Creations, Inc. v. Congress Textile Printers, Inc.,* 41 A.D.2d 924 (1st Dept. 1973). In the absence of persuasive reason to conclude that the New York Court of Appeals would reach a different result, this Court must and in any case chooses to apply the holding of the highest New York court to have reached the issue. *See In re Lehman Bros. Secur. & ERISA Litig.,* 903 F. Supp.2d 152, 194 (S.D.N.Y. 2012) (quoting *Comm'r of Internal Rev. v. Estate of Bosch,* 387 U.S. 456, 465 (1967) (judgment of intermediate


2

appellate state court "'is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.' ") (in turn quoting *West v. Am. Tel. & Tel. Co.,* 311 U.S. 223, 237 (1940)).  Accordingly, NYK's objection to so much of the R&R as recommended denial of its motion for summary judgment on its Section 720 claim for damages against Aguirre and Hickey is overruled.

*Corporate Defendants*

The R&R, as amended by memorandum endorsement dated April 4, 2013, recommended that summary judgment be entered against corporate defendants Pacific International Services, Inc. ("PISI"), Pan American Trading Company, Inc. ("PAI"), FIA, Pacific Group Holding, Inc. ("PGH"), and Ecuadorian Line, Inc. ("Ecuadorian") as well as defendants-in-interest Pacific Fruit Inc. ("Pacific") and Kelso Enterprises Ltd. ("Kelso").  Only Ecuadorian has objected.  Accordingly, the motion will be granted as to the others.

Ecuadorian contends that the evidence relied upon by Magistrate Judge Peck in support of his veil-piercing and alter ago recommendations improperly treated the corporate defendants collectively and that no separate inquiry as to the application of the relevant legal standard was undertaken with respect to Ecuadorian.  It focuses especially on its contention that there was insufficient evidence of funds transfers involving Ecuadorian.  Nevertheless, the Court concludes that the evidence was more than sufficient to justify the magistrate judge's recommendation, substantially for the reasons set forth in NYK's response to Ecuadorian's objections.  DI 68.

*Conclusion*

Plaintiff's motion for summary judgment (DI 49) is granted with respect to defendants PISI, PAI, FIA, PGH, and Ecuadorian as well as defendants-in-interest Pacific and Kelso.  It is denied as to defendants South Pacific Shipping Co., Ltd., Aguirre and Hickey.  The Court finds no just reason for delay, as plaintiff long has been frustrated in its efforts to collect more than $8 million be the actions of the defendants against him this motion should be granted and should not be further prejudiced by the continued pendency of the action against the remaining defendants.  Plaintiff shall settle a judgment on two days notice which shall include a certificate pursuant to Fed. R. Civ. P. 54(b).

SO ORDERED.

Dated:        June 14, 2013

Lewis A. Kaplan
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x

NYKCOOL A.B.,

                                          Plaintiff,

         -against-                                                      12 Civ. 5754 (LAK)

PACIFIC INTERNATIONAL SERVICES, INC., et al.

                                          Defendants.
----------------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/10/13

## JUDGMENT ~~ENTRY~~ PURSUANT TO
## RULE 54(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE

The Court previously issued an Order dated June 14, 2013, granting in part and denying in part,

Plaintiff NYKCool A.B.'s ("NYK") motions for summary judgment.  For the reasons set forth in the

Order of June 14, 2013 Plaintiff's motion for summary judgment (DI 49) is granted with respect to

corporate defendants Pacific International Services, Inc. ("PISI"), Pan American Trading Company, Inc.

("PAI"), Fruit Importers Americas, Inc.  ("FIA"), Pacific Group Holding, Inc. ("PGH"), and Ecuadorian

Line, Inc. ("Ecuadorian") ~~as well as defendants in interest Pacific Fruit, Inc. ("Pacific") and Kelso~~

~~Enterprises, Ltd. ("Kelso").~~ The amount of the judgment for NYKCool A.B. is $8,787,157 against

the above named defendants, jointly and severally, together with interest and costs thereon.

Plaintiff's motions for summary judgment are denied as to defendants South Pacific Shipping

Co., Ltd., Carlos Aguirre and Edward Hickey.


In this case the claims against the defendants against which judgment is granted are

separate from the remaining claims.  Additionally, the Court finds no just reason for delay, as

plaintiff long has been frustrated in its efforts to collect more than $8 million by the actions of

the defendants against which this judgment is granted and plaintiff should not be further

prejudiced by the continued pendency of the action against the remaining defendants.

Therefore, for the reasons stated herein, and in the Court's Order dated June 14, 2013

IT IS ORDERED, ADJUDGED and DECREED that judgment is entered *in favor of plaintiff* as against

defendants Pacific International Services, Inc., Pan American Trading Company, Inc., Fruit Importers

Americas, Inc. , Pacific Group Holding, Inc., and Ecuadorian Line, Inc., ~~as well as defendants in interest~~

~~Pacific Fruit Inc. and Kelso Enterprises Ltd~~ for $8,787,157 ~~against the above named defendants,~~

jointly and severally, together with interest and costs thereon.

This Judgment ~~Entry~~ is hereby certified and entered by the Court pursuant to Rule 54(b)

of the Federal Rules of Civil Procedure, *which* ~~that it~~ has determined there is no just reason for delay of

the entry of final judgment and that the Court has and does hereby direct that the judgments

granted hereby shall be final judgments for all purposes.

IT IS SO ORDERED

DATE: New York, New York

June 28 2013

Approved:

**Hon. Lewis A. Kaplan**
United States District Judge
Southern District of New York

**Ruby J. Krajick**
Clerk of the Court

By: _____